IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CEASAR R. BANKS,

                               OPINION AND ORDER

                 Plaintiff,

                               09-cv-9-bbc

        v

DR. BURTON COX and
MARY BARTELS,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary and declaratory relief brought under 42 U.S.C. §
1983.  Plaintiff Ceasar R. Banks contends that defendants Dr. Burton Cox and Mary Bartels
violated his Eighth Amendment rights when they were deliberately indifferent to his
shoulder, back, hip and knee pain.  Now before the court is defendants' motion for summary
judgment, which I will grant because plaintiff has failed to adduce sufficient evidence from
which a reasonable jury could find that defendants were deliberately indifferent to his serious
medical needs.

A few preliminary matters deserve mention.  First, plaintiff has not followed the
Procedure To Be Followed on Motions for Summary Judgment, attached to the April 23,
2009 Preliminary Pretrial Conference Order.  Dkt. #55, at 20.  In disputing some of the

facts proposed by defendants, plaintiff states only "Dispute," without stating his version of the fact or citing any evidence.  As noted in the court's <u>Memorandum to Pro se Litigants Regarding Summary Judgment Motions</u>, plaintiff must tell the court and defendants what evidence in the record supports his version of the fact.  <u>Id.</u> at 16.  However, because plaintiff cites his affidavit in support of his dispute of seventeen of defendants' proposed findings of fact, I will consider it.  In addition, I have considered plaintiff's proposed findings of fact to the extent that they are supported by admissible evidence.  Plaintiff also submitted a copy of a 1992 order limiting defendant Cox's medical license until he underwent drug abuse treatment.  As I stated in the June 8, 2009 order denying plaintiff's motion to reconsider my denial of his motion for preliminary injunction, this information is outdated and irrelevant to Cox's current qualifications.  Therefore, I have not considered it.

For the purpose of deciding this motion, I find the following facts to be material and undisputed.


UNDISPUTED FACTS

A.  <u>The Parties</u>

Plaintiff Ceasar Banks was incarcerated at the Prairie du Chien Correctional Institution from February 20, 2008 to January 13, 2009.  Defendant Burton Cox Jr. was employed by the Wisconsin Department of Corrections as a physician at that institution at

all times material to this action.  Defendant Cox treats the illnesses and injuries of inmates and arranges for professional consultation when necessary.  Defendant Mary Bartels is the Health Services Unit manager at the institution and oversees the delivery of medical services to inmates.

## B.  General Treatment for Pain

When plaintiff arrived at Prairie du Chien Correctional Institution in February 2008, he complained of shoulder, hip, knee and low back pain.  Plaintiff requested a low bunk, extra mattress and pillow.  Cox provided plaintiff a low bunk, low tier and an extra pillow and advised him that extra mattresses were not available.  Subsequently, plaintiff was seen on several occasions at the prison's health services unit for various complaints of pain:

- February 29, 2008 - Dr. Cox adjusted plaintiff's medications but determined that opiates were not appropriate to treat his pain.  The prison leaves the decision to prescribe opiates to the professional judgment of prison medical staff.

- March 27 - Plaintiff was seen for ear pain and also complained of shoulder, hip and back pain.  Cox indicated that there was no clear indication for narcotics to alleviate plaintiff's pain.

- April 23 - Plaintiff was seen for back pain.  He stated that he had hit his low back on the bed frame.  He was directed to use Tylenol and warm compresses for pain.

- April 25 - Dr. Cox saw plaintiff and prescribed an increase in Cycolbenzaprine, a muscle relaxant.

- April 28 - Plaintiff submitted a request to see Dr. Cox for pain.  Bartels responded to

3

plaintiff the following day, indicating that his pain was being managed with a muscle relaxant and aspirin in the maximum amounts. She indicated that the medication he was requesting was not appropriate for his condition. Cox reviewed Bartels' response on May 6 and agreed with her assessment.

- May 29 - Plaintiff requested permission from Dr. Cox to take Tylenol #3 for a migraine headache. Cox told the nurse to advise plaintiff that opiates were contraindicated for migraines. The nurse relayed the information to Banks and directed him to take his enteric coated aspirin for pain, increase his fluids and rest in a quiet, dark room.

- June 6 - Plaintiff was seen, complaining that he had experienced low back pain for 15 years. He claimed that the pain had increased over the past three days and requested a narcotic to alleviate his pain. An appointment with Dr. Cox was scheduled and a back pain packet was provided to plaintiff.

- June 16 - Plaintiff asked to see Bartels about his pain.

- June 19 - Plaintiff was seen with complaints of knee, hip and back pain. Bartels was present during this visit. Plaintiff stated that his knee pain was not being addressed by Cox. An appointment was scheduled for plaintiff to see Cox on July 18 to discuss his alleged chronic knee pain.

- July 17 - Plaintiff was seen with complaints of continued knee pain. He was allowed to have medications on the unit for two days and given a recreation restriction. His chart was referred to Dr. Cox for review.

- July 18 - Plaintiff was seen again, asking what would be done about his left knee. Staff reassured Banks and advised him that an x-ray had been ordered.

- July 20 - Plaintiff was informed that the x-ray of his left knee was normal.

- July 30 - Dr. Cox saw plaintiff and discussed his pain, the results of his left knee x-ray and the upcoming surgical consultation regarding his left shoulder. Cox ordered ice packs, a wedge cushion and buffered aspirin.

- August 13 - Dr. Cox ordered a chair for plaintiff's cell. Although plaintiff was seen

4

in the health services unit for other conditions in August, he did not complain of shoulder, hip, knee or back pain.

•   September 22 - Plaintiff was seen in the health services unit for complaints of left leg pain, but he appeared to be ambulating without difficulty.  On September 24, a nurse saw plaintiff in the courtyard and asked him about his leg.  Plaintiff said it was fine.  She informed Dr. Cox that there was no need for him to see plaintiff regarding his left leg pain.

•   October 28 - Plaintiff was seen regarding low back pain.  Cox ordered the addition of Metronidazole, an anti-infective medication, to his medications.

•   November 3 - Plaintiff alleged that he had hurt his back.  After being seen in the health services unit, plaintiff was allowed to use a wheel chair to get back to his unit. The next day, he returned to the health services unit in the wheelchair.  He appeared in no distress and could ambulate without difficulty.  He had no new injury but mentioned his past motor vehicle accident as a possible cause.  Cox ordered Prednisone for plaintiff and advised him to keep moving and stretching.

•   November 6 and 7 - Plaintiff was seen for worsening pain.  A November 11 x-ray of plaintiff's spine was normal.

•   November 14 - Plaintiff was seen, complaining that the Prednisone was not helping his back pain.  He asked to have a magnetic resonance imaging scan.  Although he was seen numerous times at the health services unit in November and December 2008, plaintiff did not complain of back pain at these visits.

•   January 13, 2009 - Plaintiff was seen with complaints of back pain.  He was instructed to continue taking his medications, including those prescribed as needed for pain, and to stretch his muscles.

## C.  Shoulder Injury and Treatment

In 2005, before he was imprisoned, plaintiff injured his left shoulder when he fell off a motor scooter.  An x-ray taken at the time of the injury indicated a relative widening of

5

plaintiff's acromioclavicular (AC) joint, which may have represented a grade 1 AC separation, as well as a questionable chip fracture of the scapula.  By April 2008, plaintiff was undergoing physical therapy for his shoulder.  In addition, he received the following treatment at the health services unit and outside hospitals:

- May 15, 2008 - Plaintiff's physical therapist recommended a referral to an orthopedic doctor because plaintiff did not seem to be gaining range of motion in his arm.  That same day, plaintiff saw Bartels to discuss his shoulder.  He requested two Tylenol #3 tablets before his physical therapy visits.  Bartels denied this request and advised him to take Tylenol upon his return from the visits.  Bartels told him that staff took his pain seriously and that they were doing what they could within the guidelines regarding his treatment.

- May 20 - Plaintiff saw Dr. Cox about his left shoulder.  Cox approved his use of Tylenol #3 before physical therapy appointments to allow better range of motion during stretching and manipulation.

- June 9 - Plaintiff was seen for left shoulder pain.  He reported that he had been pulling himself out of bed the night before and felt his shoulder roll out of joint.  Upon exam, plaintiff's range of motion was limited but did not appear painful.  His arm was placed in a sling and his chart was forwarded to Cox for review.

- June 13 - Plaintiff was seen for continued pain from his shoulder down to his ankle.  Staff noted that plaintiff had walked into the unit without any noted discomfort.  He was instructed to continue the exercise program given to him by his physical therapist.

- June 18 - Plaintiff saw Dr. James Pearson at the Prairie du Chien Memorial Hospital for an orthopedic consultation.  Pearson ordered a magnetic resonance imaging scan to rule out a torn rotator cuff or impingement.  He also recommended Tramadol (also known as Ultram) for pain.

- June 19 - Plaintiff asked for Ultram and was told that Dr. Cox would review Dr. Pearson's recommendation for the medication.  Plaintiff was instructed to continue

6

to use extra-strength acetaminophen, but he expressed reluctance to do so because of potential liver damage.

• June 24 - Dr. Cox ordered a magnetic resonance imaging scan for plaintiff.  Cox did not prescribe Ultram (a synthetic medication that works on the same pain receptors as opiates) for plaintiff because he concluded that plaintiff did not meet the indications for opiates.

• July 8 - Plaintiff was advised to use ice on his shoulder for 15 minutes, four times a day, to help alleviate his pain.

• July 10 - A magnetic resonance imaging scan was performed on plaintiff's left shoulder.

• July 16 - Plaintiff returned to see Dr. Pearson, who reviewed the scan report and recommended that plaintiff undergo arthroscopy with depingement to include a resection of the outer end of the clavicle with possible acromioplasty and lateral repair.  The same day, Dr. Cox requested authorization for this surgery.

• July 20 - Plaintiff was told that he would be going to the University of Wisconsin Hospital and Clinics for a consultation regarding his left shoulder.

• July 21 - Dr. Pearson informed Dr. Cox that the surgery could not be performed at the Prairie du Chien Memorial Hospital.

• July 22 - Dr. Cox referred Banks to the University of Wisconsin Hospital Orthopedics Department for evaluation with respect to the surgical procedure.  He ordered that the 2008 magnetic resonance imaging scan report and Dr. Pearson's notes be sent with plaintiff to his appointment.

• August - Although plaintiff was seen in the health services unit for other conditions this month, he did not complain of shoulder pain.

• September 5 - Plaintiff was seen by Michael Shin, M.D., an orthopedic fellow at the University Department of Orthopedics and Rehabilitation Medicine.  For unknown reasons, the 2008 magnetic imaging scan report was not sent with plaintiff. However, the 2004 and 2006 scan reports were sent.  Shin diagnosed plaintiff with

7

a mild adhesive capsulitis or "frozen shoulder" and recommended that he undergo physical therapy two to three times a week for six to eight weeks with a daily personal exercise program.

- September 10 - Dr. Cox saw plaintiff and discussed the orthopedic consultation with him.  Cox requested additional physical therapy visits for plaintiff's left shoulder.

- September 24 - Plaintiff informed a nurse that the wrong paperwork had been sent to Dr. Pearson.

- October 7 - Plaintiff saw Dr. Cox about his shoulder.  Plaintiff stated that the physical therapy was going quite well, but was quite painful afterward.  Cox ordered Tylenol #3 to alleviate his pain after physical therapy and a thermal top to keep his shoulders warm.

- October 15 - Plaintiff talked to Bartels, expressing concerns that she was making decisions about his medical treatment.  She reassured him that Dr. Cox was making all medical decisions regarding his care.

- October 21 - Plaintiff requested Tylenol #3 for his physical therapy days.  Cox ordered a change in the dosing schedule of his muscle relaxant to noon, evening and bedtime.

- October 31 - Plaintiff saw Dr. Cox, who reported that plaintiff had finished six physical therapy visits.  The physical therapist indicated that plaintiff's range of motion was better but plaintiff disagreed.  He requested a follow-up orthopedic appointment.  Cox ordered a cane for plaintiff to use while walking and a follow-up appointment with University of Wisconsin Orthopedics and that the July 2008 magnetic resonance imaging scan report and Dr. Pearson's note accompany plaintiff to the appointment.

- January 16, 2009 - Plaintiff was seen again by Dr. Shin, who reviewed plaintiff's 2008 magnetic resonance imaging scan and found no significant change in that scan from the one done in 2004 and less inflammation on the joint in 2008.  Shin did not believe that surgery was necessary.  Instead, he recommended an extremely aggressive and continuous physical therapy program, along with Ultram to lessen plaintiff's pain so he could participate in physical therapy.  He offered plaintiff a cortisone injection

but plaintiff refused, stating that such injections had not helped him in the past.  In Shin's opinion plaintiff had adhesive capsulitis with rotator cuff tendinitis.  Shin's notes were approved by Dr. John M. Orwin, Associate Professor of the Division of University of Wisconsin Sports Medicine.


OPINION

To survive summary judgment on his Eighth Amendment claim, plaintiff must propose facts from which a reasonable jury could find that defendants' refusal to authorize surgery for his shoulder or prescribe narcotic pain medication for his shoulder, hip, knee and back pain constituted "deliberate indifference" to plaintiff's "serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  A serious medical need may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person.  Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006).  The condition does not have to be life threatening.  Id.  A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994).

It is undisputed that plaintiff had a painful left shoulder injury, documented by a magnetic resonance imaging scan.  Relying on this evidence, a reasonable jury could find that

plaintiff's left shoulder injury was a serious medical need.  Although plaintiff consistently complained about hip, knee and back pain, he has submitted no evidence showing that he had a serious medical condition causing this pain.  His medical records include almost no mention of hip pain.  X-rays of plaintiff's back and knees taken while he was at the institution were normal.  In addition, plaintiff stated that he had had normal hip x-rays at the institution where he was previously incarcerated.

Even assuming that plaintiff's hip, knee and back pain were serious medical needs, plaintiff would still need to show that defendants' treatment with respect to all of his medical conditions was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition."  Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted).  In other words, defendants' treatment must be so far afield of accepted professional standards as to imply that it was not actually based on a medical judgment.  Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996).  "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes, 95 F.3d at 590-91.  Thus, neither incorrect diagnosis nor improper treatment

10

resulting from negligence states an Eighth Amendment claim. <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1374 (7th Cir. 1997).

Under these standards, therefore, the deliberate indifference prong of plaintiff's claim has three elements:

1. Did plaintiff need medical treatment?

2. Did defendants know that plaintiff needed treatment?

3. Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

Because plaintiff has the burden to prove his case at trial, it is his burden on summary judgment to come forward with enough evidence on each of these elements to show that a reasonable jury could find in his favor. <u>Borello v. Allison</u>, 446 F.3d 742, 748 (7th Cir. 2006); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986).

## A. <u>Shoulder Surgery</u>

Plaintiff asserts that defendants should have allowed him to have surgery on his shoulder, which Dr. Pearson recommended after reviewing plaintiff's 2008 magnetic resonance imaging scan. The facts show that, because Pearson did not have the facilities to perform the surgery, defendants referred plaintiff to the University of Wisconsin Hospital and Clinics. Plaintiff was seen at that facility by Dr. Shin, who concluded that plaintiff did

11

not need surgery.  When two qualified physicians reach different conclusions, a defendant physician cannot be found to have acted with deliberate disregard when he or she chooses one of the two reasonable options.  It is well established that the difference of opinion among medical personnel regarding treatment does not rise to deliberate indifference. Estelle, 429 U.S. at 10; Estate of Cole, 94 F.3d at 261.

Realizing this problem in his proof, plaintiff contends that Dr. Shin reached an erroneous conclusion because defendants failed to forward to him a copy of Dr. Pearson's report and the 2008 scan results.  Plaintiff overlooks the fact that when defendant Cox realized that Shin had not had all the relevant documents, he sent plaintiff back to the hospital with the 2008 scan results.  These documents gave Shin more information from which he found even less reason to perform surgery.  He found no significant change in plaintiff's condition between the two scans and less joint inflammation in the 2008 scan. This confirmed his opinion that surgery was not necessary.  Defendants' initial failure to send the 2008 scan to Shin did not harm plaintiff.

Without any evidence that defendants' decision to follow Dr. Shin's recommendation was a substantial departure from accepted medical judgment, practice or standards, plaintiff cannot establish that defendants acted with deliberate indifference in not arranging for surgery.

12

B. <u>Pain Medication</u>

Plaintiff asserts that defendants acted with deliberate indifference in failing to provide proper treatment for his shoulder, knee, hip and back pain.  However, the undisputed facts show that defendants did not disregard plaintiff's requests for care, but rather refused to provide him the type of care he wanted.  Defendants saw plaintiff on numerous occasions for his complaints of pain and prescribed aspirin, Tylenol, Prednisone and muscle relaxants. They also ordered ice packs, a wedge cushion, warm compresses, restricted activity and stretching.  Although plaintiff may believe that he needed narcotic pain medication, the Constitution does not require prison officials to provide prisoners the medical care they believe to be appropriate; it requires officials to rely on their medical judgment to provide prisoners with care that is reasonable in light of their knowledge of each prisoner's problems. <u>Estelle</u>, 429 U.S. at 107 (plaintiff's objection to prison physician's failure to order x-ray of his back failed to state claim under Eighth Amendment when prison officials provided minimally adequate  treatment).

Although Dr. Pearson recommended Ultram for plaintiff's shoulder pain, it is undisputed that the prison delegates to the prison medical staff the decision to use such pain medications.  Dr. Cox did not prescribe plaintiff opiates for his shoulder because Cox was not persuaded that plaintiff met the medical indications for opiates.  As I have explained, differences of opinion among medical personnel about treatment do not

13

demonstrate deliberate indifference.  Without more, plaintiff cannot show that defendants' treatment decisions were unreasonable or blatantly inappropriate.

Because no reasonable jury could find that defendants acted with deliberate indifference to plaintiff's serious medical needs, I will grant defendants' motion for summary judgment.


ORDER

IT IS ORDERED that the motion for summary judgment, dkt. #79, of defendants Burton Cox and Mary Bartels is GRANTED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 23rd day of February, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14